UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TIMOTHY R. SCHWINGLE,

                              Plaintiff,

                                                  Case # 25-CV-6204-FPG

v.

                                                  DECISION AND ORDER

THE UNITED STATES OF AMERICA,

                              Defendant.

## INTRODUCTION

Timothy R. Schwingle ("Plaintiff") brings this action against the United States of America ("Defendant") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 *et seq*. ECF No. 1. Plaintiff alleges medical malpractice, negligence, and negligent supervision from the dental care he received at the Rochester Calkins Veterans Affairs Clinic ("VA Clinic"). *Id.* at 24-26. He seeks monetary damage, plus statutory interest.[1] *Id.* at 27. Presently before the Court is Defendant's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. Fed. R. Civ. P. 12(b)(1), 12(b)(6). ECF No. 9. Plaintiff opposes the motion. ECF No. 11. For the reasons that follow, Defendant's motion to dismiss is GRANTED in part and DENIED in part.

## LEGAL STANDARD

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision

---

[1] In his complaint, Plaintiff initially moved for declaratory judgment. ECF No. 1. In its motion to dismiss, Defendant argues in "Point IV" that Plaintiff's request for declaratory judgment should be dismissed for lack of jurisdiction. ECF No. 9-3 at 13. In its response, Plaintiff appears to concede the issue when he writes, "Point IV – NO CONTEST." ECF No. 11 at 18. As such, the Court finds that Plaintiff has withdrawn his motion for declaratory judgment. Thus, the Court will not discuss this further.

on the merits and, therefore, an exercise of jurisdiction." *Pressley v. City of New York,* No. 11–CV–3234, 2013 WL 145747, at *4–5 (E.D.N.Y. Jan. 14, 2013) (citing *Magee v. Nassau Cnty. Med. Ctr.,* 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)). Therefore, the Court first determines whether it has jurisdiction over this action before determining whether Plaintiff has stated a claim.

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, courts may rely on "evidence outside the pleadings." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff has the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *See Luckett v. Bure,* 290 F.3d 493, 496-97 (2d Cir. 2002). A failure to exhaust administrative remedies allows a court to dismiss an action because no subject matter jurisdiction exists. *DiLaura v. Power Auth. of State of N.Y.*, 982 F.2d 73, 79 (2d Cir. 1992).

Under Rule 12(b)(6) of the FRCP, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court deciding a motion to dismiss pursuant to Rule 12(b)(6) "must accept as true all of the allegations contained in a complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, FRCP 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." If that statement fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims may be dismissed pursuant to Rule 12(b)(6). *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

For purposes of a motion to dismiss, a complaint is deemed to include "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by

reference." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). The Court may also review any "documents that the plaintiff[] either possessed or knew about and upon which [he] relied in bringing the [action]." *Id.*

## BACKGROUND

The following facts are taken from the complaint (ECF No. 1) and the Standard Form 95 ("SF-95") (ECF No. 9-2), unless otherwise noted. Plaintiff Timothy Schwingle is a seventy-five-year-old combat Vietnam Veteran who was exposed to Agent Orange herbicide during his military service. ECF No. 1 at ¶ 9. For about twenty-eight months beginning in April 2021, Plaintiff attended at least twenty-four dental appointments at the VA Clinic. *Id.* at ¶ 190. Throughout this time, he had three different dentists due to turnover at the VA Clinic. *See, e.g.*, *id.* at ¶¶ 96, 110-11, 141.

In his SF-95, Plaintiff writes that he requested implants at his "very first [VA Clinic] dental session" on April 6, 2021.[2] ECF No. 9-2 at 7. Plaintiff's wife, a former dental assistant, "was present and participated in the appointment." ECF No. 1 at ¶¶ 20, 135. At the time, Plaintiff was missing about half of his teeth. *Id.* at ¶ 22. At this first dentist appointment, Dr. Calnon took note that Plaintiff struggled with his dentures and, as a result, experienced problems eating. *Id.* at ¶ 23. On May 10, 2021, at his second dentist appointment, Plaintiff told his prosthodontist, Dr. Kuyunov, "I want to see if it is possible for me to get implants." *Id.* at ¶ 32. Between June 2021 and October 2022, Plaintiff had several more dental appointments, which included, for example, extractions, repairing of a cavity, crown fittings, and cleanings. *Id.* at ¶¶ 36-97. On October 5, 2022, Dr. Calnon "reported that [Plaintiff] continued to explain to his care team that he wanted

---

[2] Plaintiff's complaint notes that "[Plaintiff] had requested implants as early as May 2021" but also that "Dr. Kuyunov had memorialized that [Plaintiff] was seeking implants from the start . . . ." ECF No. 1 at ¶ 169. In any event, Plaintiff asked for implants beginning in April or May 2021.

implants." *Id.* at ¶ 103. A few weeks later, on October 19, 2022, Plaintiff arrived to the VA Clinic

with his prosthodontic device. *Id.* at ¶ 106. Dr. Calnon reported that it did not fit properly in

Plaintiff's mouth, even after she made repairs, a replacement, and adjustments. *Id.* at 107. The next

day, Plaintiff was admitted to the Comprehensive Psychiatric Emergency Program at Strong

Memorial Hospital for "advanced suicide behavior." *Id.* at ¶108. He remained under psychiatric

care for a total of thirteen days. *Id.* at ¶ 109. On December 7, 2022, Dr. Calnon reported that

"[Plaintiff's] care has been fragmented [at the VA Clinic] and we have not delivered a reliable set

of dentures." *Id.* at ¶ 113. Without working dentures, his ability to eat was limited. *Id.* at ¶ 115.

On March 7, 2023, after Plaintiff went for three months without a call from the VA Clinic,

Plaintiff's son contacted the VA Clinic's Community Care office. *Id.* at ¶ 126. Plaintiff's son

ultimately spoke to someone from the VA Clinic Dental Team's phone line who told him that

Plaintiff had "missed his last appointments." *Id.* at ¶¶ 128-29. The next day, on March 8, 2023,

Plaintiff's son phoned the VA Clinic and spoke to Dr. Nidea, the Chief Dentist for the Finger Lakes

VA Health Care System. *Id.* at ¶ 131. Plaintiff's son explained to Dr. Nidea that Plaintiff could not

eat properly with the few teeth he had and that he was "losing significant weight." *Id.* at ¶ 132.

With "no movement on the dental care," on March 17, 2023, Plaintiff's son called Dr. Nidea. *Id.*

at ¶ 134. Plaintiff's wife also spoke to Dr. Nidea. *Id.* at ¶¶ 135-36. At some time thereafter,

Plaintiff's wife called Dr. Nidea and told him that "[Plaintiff] really needed implants." *Id.* at ¶ 137.

On March 9, 2023, the VA Clinic called Plaintiff to set up an appointment. *Id.* at ¶ 140. Plaintiff

subsequently had dental appointments with Dr. Xu in April and June 2023. *Id.* at ¶¶ 141, 144.

On July 7, 2023, Plaintiff consulted with a private dentist at Elmwood Dental about his

dental condition. *Id.* at ¶ 154. On July 28, 2023, Plaintiff's son emailed Dr. Xu the treatment plan

and cost estimate he had received from Elmwood Dental while noting that Plaintiff, "needs help

NOW." *Id.* at ¶¶ 155-56. Dr. Xu responded that he had forwarded the email to Dr. Nidea. *Id.* at ¶ 157. Two weeks later, on August 11, 2023, Plaintiff's son received a call back from Dr. Xu, who stated that if implants were to be approved as treatment, the request would first have to go before the Implant Board. *Id.* at ¶ 159. Plaintiff had never been told how to make an Implant Board request. *Id.* at ¶ 175.

On August 21, 2023, Plaintiff met with Dr. Xu, who recorded Plaintiff's chief complaint as, "I want teeth [in order] to eat." *Id.* at ¶ 166. During that visit, Dr. Xu could not provide definitive answers as to the Implant Board's likelihood of approving implants nor how long it would take for a decision. *Id.* at ¶¶ 171, 173. Plaintiff declined to accept the VA Clinic's treatment plan, preferring to go with Elmwood Dental, as it had provided him with a definitive treatment timeline. *Id.* at ¶ 177.

On August 21, 2023, during his dental appointment, Plaintiff told Dr. Xu that he wanted the VA Clinic to cover the cost of Elmwood Dental's treatment. *Id.* at ¶ 181. Dr. Xu noted he would forward this request to Dr. Nidea, though he was not sure it would be approved. *Id.* At an unknown date, Plaintiff received "high-quality dental implants" from Elmwood Dental, which cost him $41,335.00. *Id.* at ¶ 179.

On July 10, 2024, Plaintiff submitted his Standard Form 95 (SF-95). ECF No. 9-2. He alleged that the VA Clinic failed to provide a proper standard of care, failed to timely diagnose and treat his dental issues, and failed to provide, follow, and execute a reasonable treatment plan. *Id.* at 1. In his SF-95, Plaintiff pointed to a December 7, 2022 report from Dr. Calnon where she explained that Plaintiff's "care has been fragmented here and we have not delivered a reliable set of dentures." *Id.* at 5. Additionally, Plaintiff wrote that "[Plaintiff's] family tried to communicate with the [VA] Chief of Dentistry, Dr. Nidea, seeking implants and/or a Community Care consult

for external help with [Plaintiff's] dental care" and that "VA dentists and the [VA Clinic's] Chief of Dentistry [Dr. Nidea] failed to provide a viable treatment plan . . . and ultimately failed to meet a reasonable standard of care . . . ." *Id.* at 4. Plaintiff included in his SF-95 that his family, specifically his son and wife, had informed Dr. Nidea that he required "immediate dental help at the VA," "the temporary bridges, partials, and dentures never worked," and he "needed a permanent solution (e.g. implants)." Further, Plaintiff wrote in his SF-95 that "Dr. Nidea failed to follow-up with the veteran and his family [about these concerns]." *Id.* at 5.

On April 15, 2025, Plaintiff brought the instant action in this Court. ECF No. 1. He brings claims of medical malpractice, negligent supervision, and negligence pursuant to the FTCA. Plaintiff Defendant now moves to dismiss Plaintiff's complaint in part.

## DISCUSSION

Defendant moves to dismiss the claim of negligent supervision, arguing that the negligent supervision claim was not administratively exhausted and therefore should be dismissed. ECF No. 9-3 at 12-13. Additionally, Defendant moves to dismiss "most" of Plaintiff's medical malpractice claim and all of Plaintiff's negligence claim. *Id.* at 7-11. Specifically, Defendant argues that (1) most of the dental malpractice allegations are time-barred;[3] and (2) the negligence claim is duplicative of the medical malpractice claim. *Id*. Furthermore, Defendant moves to dismiss Plaintiff's request for pre-judgment statutory interest. ECF Nos. 9-3 at 13. Finally, Defendant requests that the case be conditionally dismissed because Plaintiff failed to file a certificate of

---

[3] While Defendant does not specify under which Rule of Federal Procedure it is moving to dismiss "most" of Plaintiff's medical malpractice allegations, this Court assumes it is moving under FRCP 12(b)(6). *See Torres v. United States*, 612 F. App'x 37, 39, 41 (2d Cir. 2015) (summary order) (remanding because the district court improperly dismissed a FTCA claim barred by statute of limitations on "jurisdictional" grounds when it should have been dismissed on "failure to state a claim" grounds.)

merit, pursuant to New York Civil Practice Laws & Rules ("NYCPLR") 3012-a. ECF No. 9-3 at 14-15. The Court discusses each of Defendant's arguments below.

### I.    Administrative Exhaustion Pursuant to Federal Tort Claims Act

First, the Court addresses Defendant's argument that Plaintiff's negligent supervision claim was not administratively exhausted, as required under the Federal Tort Claims Act ("FTCA"). ECF No. 9-3 at 12.

Before bringing a claim under the FTCA in federal court, a plaintiff must comply with the FTCA's administrative exhaustion requirements by filing an administrative claim. 28 U.S.C. § 2401(b); *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005). While the administrative claim does not need to meet formal pleading requirements, it must "provide sufficient information both to permit an investigation and to estimate the claim's worth." *McLean v. United States*, No. 20-CV-8189 (ALC), 2022 WL 976828, at *3 (S.D.N.Y. Mar. 31, 2022) (quoting *Keene Corp. v. United States*, 700 F.2d 836, 842 (2d Cir. 1983). The claim must be specific enough to allow the federal government to "expedite the fair settlement of tort claims." *Id.* (quoting *Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998)). Courts do not have subject matter jurisdiction to decide a "new claim" where the "administrative claim was silent." *Id.* (citation modified).

Here, Plaintiff argues that he provided enough facts for Defendant to "infer that negligent supervision occurred." ECF No. 11 at 18. In his complaint, Plaintiff alleges that "Dr. Nidea and unknown others jointly and severally failed to uphold accepted standards of dental care for [Plaintiff] in their supervisory capacity." ECF No. 1 at ¶ 212. Under New York law, to prevail on a claim of negligent supervision, a plaintiff must prove: "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of

the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Buchanan for Buchanan v. Hesse*, 521 F. Supp. 3d 348, 356 (S.D.N.Y. 2021), *aff'd sub nom. Buchanan v. Hesse*, No. 21-649-CV, 2022 WL 829163 (2d Cir. Mar. 21, 2022).

In his SF-95, Plaintiff wrote that "[Plaintiff's] family tried to communicate with the [VA] Chief of Dentistry, Dr. Nidea, seeking implants and/or a Community Care consult for external help with [Plaintiff's] dental care" and that "VA dentists and the [VA Clinic's] Chief of Dentistry [Dr. Nidea] failed to provide a viable treatment plan . . . and ultimately failed to meet a reasonable standard of care . . . ." ECF No. 9-2 at 4. Plaintiff included in his SF-95 that family, specifically his son and wife, had informed Dr. Nidea that he required "immediate dental help at the VA," that "the temporary bridges, partials, and dentures never worked," and that he "needed a permanent solution (e.g. implants)." Further, Plaintiff wrote in his SF-95 that "Dr. Nidea failed to follow-up with the veteran and his family [about these concerns]." *Id.* at 5. While Plaintiff never explicitly stated in his SF-95 that he was raising the claim of "negligent supervision," based on the allegations in his SF-95 described above, the Court concludes that Plaintiff provided sufficient information to allow the Defendant to investigate a claim for negligent supervision, estimate its worth, or expedite a settlement. *See McLean*, 2022 WL 976828, at *3. Thus, Defendant's motion to dismiss Plaintiff's negligent supervision claim is DENIED.

## II.    Timeliness of Claim under the FTCA

Defendant argues that "most" of Plaintiff's malpractice claim is time-barred under the FTCA. ECF No. 1 at 7-11. Plaintiff responds that it is not time-barred because the continuous treatment doctrine applies. *Id.* at 9-15. The Court discusses below.

Before bringing an FTCA claim in federal court, a plaintiff must comply with the FTCA's administrative exhaustion requirement to present claims in writing to the appropriate federal agency within two years after the claim accrues. 28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues . . . ."); *Celestine*, 403 F.3d at 82. "Generally, an FTCA claim for medical malpractice accrues 'at the time of injury.'" *Picarella v. United States*, No. 22-CV-4983 (KAM) (ARL), 2024 WL 1435744, at *4 (E.D.N.Y. Apr. 3, 2024) (quoting *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998)).

The Second Circuit has recognized two general exceptions to the claim-accrual rule. The first exception is the "diligence-discovery rule," which postpones the accrual date in situations "where a plaintiff would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted. . . ." *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 140 (2d Cir. 2011) (citation modified). It sets the claim accrual date to the time when "with reasonable diligence, the plaintiff has or should have discovered the critical facts of both his injury and its cause." *Id.* at 140 (citation modified). Plaintiff has not raised this exception, and so this Court will not discuss it further.

The second exception to the claim-accrual rule is the "continuous treatment doctrine," which tolls the statute of limitations while the "plaintiff is in the continuing care of the negligent actor for the same injury out of which the FTCA action arose . . . ." *Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078, 1080 (2d Cir. 1988). Two rationales support the continuous treatment doctrine: (1) "it is not reasonable to expect a patient in the continuing care of a doctor to discover the doctor's acts may be the cause of his injuries"; and (2) it is "absurd to expect a patient being treated by a doctor or hospital to interrupt corrective treatment by instituting suit against either

while under their continuing care." *Id.* at 1080-81; *see Grosso v. Buccigrossi*, No. 08-CV-4481 JG VVP, 2010 WL 3282642, at *3 (E.D.N.Y. Aug. 18, 2010) (applying the continuous treatment doctrine in a dentist-patient relationship).  However, the continuous treatment doctrine does not apply if the underlying rationales are not present. *Sczcerba v. U.S. Veterans Admin.*, No. 13-CV-098S, 2014 WL 1875356, at *1 (W.D.N.Y. May 9, 2014).

Here, in response to Defendant's argument that all claims for damages pre-dating July 10, 2022 are untimely and cannot be brought before this Court (ECF No. 9-3 at 7-11), Plaintiff raises the continuing treatment doctrine exception. ECF No. 11 at 9-15. However, this Court finds that the rationales behind the continuous treatment doctrine do not apply here as pled in Plaintiff's complaint. As early as April or May 2021, Plaintiff informed the VA Clinic he was "seeking implants." ECF No. 1 at ¶ 169; ECF No. 9-2 at 7. In his second visit to the VA Clinic, on May 10, 2021, he told the VA Clinic doctors that "I want to see if it is possible for me to get implants." ECF No. 1 at ¶ 32. Consequently, it is evident that early on Plaintiff would have been displeased with his treatment at the VA Clinic when he had not received the implants he had wanted and requested. Thus, the first rationale, that it is not reasonable to expect a patient in the continuing care of a doctor to discover the doctor's acts may be the cause of his injuries, is absent here. *See Sczcerba*, 2014 WL 1875356, at *2 (finding the first rationale for the continuous treatment doctrine was not present where Plaintiff was displeased with the result of surgery almost immediately after it was completed). Similarly, the second rationale, that it is absurd to expect a patient treated by a doctor or hospital to interrupt corrective treatment by suing while undergoing care, is also absent here. Here, Plaintiff is arguing that the VA Clinic committed medical malpractice when it "fail[ed] to address properly [Plaintiff's] gum and dental disease." ECF No. 1 at ¶ 199. However, the failure to diagnose and treat a condition does not amount to a course of continuous treatment. *See Doane*

*v. United States*, 369 F. Supp. 3d 422, 444 (N.D.N.Y. 2019) ("[W]e cannot accept the self-contradictory proposition that failure to establish a course of treatment is a course of treatment."). Plaintiff cannot rely on the continuous doctrine treatment to revive an otherwise untimely claim.

Therefore, Defendant's motion to dismiss the medical malpractice claim related to actions taken prior to July 10, 2022 is GRANTED.[4]

### III.    Duplicative Claim

Defendant argues that Plaintiff's negligence claim is duplicative of his medical malpractice claim and therefore should be dismissed. ECF No. 9-3 at 11. Plaintiff responds that not every negligent act done to a patient constitutes medical malpractice and that without discovery, it is premature for the Court to rule out negligence. ECF No. 11 at 15-16. The Court discusses this below.

Here, Plaintiff's negligence claim is merely a reformulation of his medical malpractice claim. *Compare* ECF No. 1 at ¶¶ 198-99 (describing medical malpractice claim "dentists . . . [who] deviated from these standards of care . . . [by] failing to address properly [Plaintiff's] gum and dental disease"), *with id.* at ¶¶ 204-05 (describing negligence claim as "dentists . . . [who] breached these duties of care . . . [by] failing to address properly [Plaintiff's] gum and dental disease"). The Second Circuit has held that "[w]hen the duty [of care] arises from the physician-patient relationship or is substantially related to medical treatment, the breach gives rise to an action sounding in medical malpractice, not simple negligence." *La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 101 (2d Cir. 2014) (affirming the district court's dismissal of the negligence claim as duplicative of the medical malpractice claims). Because Plaintiff's allegation of

---

[4] Defendant did not move to dismiss the portion of Plaintiff's medical malpractice claim that seeks damages beginning July 10, 2022 and onward.

negligence is entirely related to medical treatment, the breach gives rise to medical malpractice and is thus duplicative. Therefore, Plaintiff's negligence claim is DISMISSED.

### IV.    Statutory Interest

Defendant argues that Plaintiff's request for pre-judgment statutory interest should be dismissed. ECF No. 9-3 at 13-14. In his response, Plaintiff clarifies that he is not requesting pre-judgment statutory interest, only post-judgment statutory interest. ECF No. 11 at 18. In its reply, Defendant concedes that any claim for post-judgment statutory interest would be premature at this time. ECF No. 17 at 12-13. Thus, the Court DENIES Defendant's motion to dismiss pre-judgment statutory interest as moot.

### V.    Certificate of Merit

Defendant argues that the Court should conditionally dismiss the case because Plaintiff did not serve a certificate of merit with his complaint, as required by New York Civil Practice Law & Rules ("NYCPLR") § 3012-a.[5] ECF No. 9-3 at 14-15. Plaintiff argues that the certificate of merit is a procedural rule and thus, not required in FTCA actions. ECF No. 11 at 19. The Court agrees with Plaintiff.

NYCPLR § 3012-a(a)(1) requires that in a dental malpractice action, the complaint shall be accompanied by a certificate of merit declaring that plaintiff's attorney has consulted with at least one dentist and that based on the consultation, the attorney has concluded there is a reasonable basis for the commencement of the civil action. The FTCA requires that courts apply the law of the state where the tort occurred. 28 U.S.C. § 1346(b)(1); *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021). However, while a state's substantive rules apply in federal court pursuant to the

---

[5] A certificate of merit is a "certificate, executed by the attorney for the plaintiff, declaring that (1) the attorney has reviewed the facts of the case and has consulted with at least one . . . dentist in dental malpractice actions . . . ." NYCPLR § 3012-a(a)(1).

FTCA, a state's procedural rules do not apply; the FRCP are the governing procedural rules. *See Corley v. United States*, 11 F.4th 79, 85 (2d Cir. 2021) (holding state procedural rule "inapplicable" in FTCA actions).

Here, the events giving rise to this claim occurred in New York, and so New York's substantive rules apply while its procedural rules do not. *See Borley*, 22 F.4th at 78. In *Berk v. Choy*, the Supreme Court unanimously held that a state law requiring an affidavit of merit from a medical professional was a procedural rule that impermissibly heightened the federal pleading requirements. No. 24-440, 2026 WL 135974, at *4 (U.S. Jan. 20, 2026). Thus, the Supreme Court reversed and remanded the case, finding the district court erred when it had dismissed Plaintiff's complaint for failing to comply with the affidavit of merit law. *Id.* Likewise, in *Corley*, the Second Circuit determined that a state law requiring a certificate and medical opinion impermissibly heightened and "direct[ly] contrast[ed]" with federal pleading and service requirements. 11 F.4th at 89. Therefore, this Court concludes that a certificate of merit pursuant to CPLR § 3012-a is a procedural rule that impermissibly heightens the Court's federal pleading and service requirements, and is not required in this action. As such, the Court DENIES Defendant's request to conditionally dismiss this case.

## VI.    Leave to Amend

Although Plaintiff does not request leave to replead, the Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). The decision to grant leave to amend is within the discretion of the court, and "where the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Id.*

Here, to the extent that Plaintiff can plausibly allege a tolling of the statute of limitations or other theory that would make his medical malpractice allegations pre-dating July 10, 2022 timely pursuant to the FTCA, Plaintiff is granted leave to amend. Plaintiff's claim against Defendant for negligence pursuant to the FTCA is dismissed with prejudice, to the extent it is related to medical treatment, as it is duplicative of his medical malpractice claim.

## CONCLUSION

For these reasons, Defendant's motion to dismiss (ECF No. 9) is GRANTED in part and DENIED in part. Plaintiff's claim pursuant to the FTCA for negligence is DISMISSED WITH PREJUDICE to the extent it is duplicative of Plaintiff's medical malpractice claim. Plaintiff's claim pursuant to the FTCA for medical malpractice pre-dating July 10, 2022 is DISMISSED WITHOUT PREJUDICE, and Plaintiff is granted leave to replead.

Plaintiff may file an amended complaint by **March 19, 2026**. If after **March 19, 2026**, he does not file an amended complaint, the medical malpractice claim pre-dating July 10, 2022 will be dismissed with prejudice.

IT IS SO ORDERED.

Dated:  February 17, 2026
        Rochester, New York

HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York